UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRYSTLE DEPARDO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| CITY OF METHUEN, | ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

**I.    INTRODUCTION**

1. This case is brought by Krystle DePardo ("DePardo" or "Plaintiff") against The City of Methuen ("the City" or "Methuen"), for various violations of DePardo's rights under M.G.L. c. 151B, §4, the Fourteenth Amendment of the United States Constitution, as well as violations of the common law and public policy.

2. DePardo has held the position of Principal Clerk in the Water Department of the Department of Public Works for the City since October 2012. From the beginning of her employment, she has endured direct and indirect sexual harassment and a sexually hostile work environment as a result of her supervisor's, Superintendent Daryl Laurenza's, conduct as well as other Water Department employees' conduct which Laurenza has failed and refused to curtail.

3. In 2019, when these issues were brought to the attention of Assistant City Solicitor Anne L. Randazzo, the City placed DePardo on paid administrative leave while her abusers continued to work without consequences. Months later, the City conducted an

1

investigation that concluded the atmosphere about which DePardo complained exists but that it was acceptable because her coworkers did not perceive DePardo as offended.

4. By creating, perpetuating, and failing to adequately remedy a hostile work environment, the City of Methuen has violated state and federal law.

## II. PARTIES

5. Plaintiff Krystle DePardo, is a resident of Salem, New Hampshire. She is an employee of the City of Methuen.

6. The City of Methuen is a municipality in the Commonwealth of Massachusetts.

## III. JURISDICTION AND VENUE

7. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## IV. STATEMENT OF FACTS

9. Krystle DePardo ("Plaintiff") began working for the City of Methuen ("City" or "Defendant") Water Department in October 2012 as the Principal Clerk.

10. At the commencement of her employment, Plaintiff made Water Superintendent Daryl Laurenza aware that childcare issues required that she work a modified work schedule. Laurenza agreed to this modification.

11. Her desk is in the Water Department Office, where she answers the phones, takes and distributes service calls, schedules work, creates work schedules,

communicates with vendors, and creates and maintains Water Department records, among other duties.

12. Water Department field workers, all of whom are male except one, report to the same office at the beginning and end of their work day and use the breakroom next to Plaintiff's office for breaks, including lunch, and restrooms are located in the breakroom.

13. Throughout her employment, Plaintiff was subjected to constant lewd, vulgar, sexually suggestive conversations and comments. Plaintiff's coworkers and supervisor (Laurenza) frequently discussed sex and penises, including sharing photographs of penises.

14. Sometimes these conversations were about sex and genitals in general but other times they were about specific individuals. Male coworkers often discussed their own penis and sexual partners or the penises and sexual partners of other male coworkers.

15. One male coworker, Foreman John Talbot, bragged to coworker Dan Tulley that he had sex with Plaintiff even though that is not true.

16. One male coworker, Brian Beauchesne, told other Water Department employees about a dream where he performed oral sex on Plaintiff. Plaintiff only learned about this alleged dream when another coworker, Steve Hadley, told a group of employees, including Plaintiff, about the dream. Although this dream allegedly occurred in 2014, Plaintiff's male coworkers have repeatedly reminded her about it since then.

17. This alleged dream was particularly concerning to Plaintiff because of Beauchesne's prior interactions with Plaintiff. Shortly after she began working for the

3

City, Beauchesne told Plaintiff that he and his wife are "swingers" and often go to "swinger parties" and are on websites for swingers. He repeatedly encouraged Plaintiff to join him at these events, which Plaintiff repeatedly declined.

18. After Plaintiff began dating her husband, William DePardo, in 2017, Talbot began making comments to Plaintiff about her future husband, including telling Plaintiff she "found a sugar daddy" and asking about Mr. DePardo's genitals. For example, he asked whether Mr. DePardo has "old, saggy man balls," or has "a little penis like [Talbot's]?" (Talbot often spoke to his coworkers about how his penis is small.)

19. Throughout her employment, Plaintiff repeatedly complained to Laurenza about the conduct described above. Laurenza's most common response was that this behavior was normal when working with men. On rare occasions, Laurenza told the Department's employees to stop engaging in such behavior. When he did so, the behavior would stop for a few days then return to the status quo.

20. Laurenza often participated in the inappropriate conduct, as well. On June 21, 2019, for example, Laurenza and other Water Department employees, including Plaintiff, participated in a CPR training provided by the City's Fire Department. Water Department employees, including Laurenza, made jokes such as "these dummies don't have any clothes on so, if the girl is hot, can we take her clothes off" and "I thought we were learning mouth to cock, not mouth to mouth."

21. Plaintiff believes four Water Department employees, including Laurenza, were suspended for their conduct during this training but not until in or around September 2020.

22. Plaintiff's work environment caused her to suffer migraines and colitis and to increase her treatment with a therapist. As a result, she began missing significant time from work. When her accrued time was exhausted, a male coworker offered to donate sick time to cover her. When she presented this to Laurenza, he asked "what did you do to get this" implying that she performed sexual favors.

23. Finally, on October 21, 2019, she notified Laurenza that she could no longer endure these conditions and ceased working. Since that time, Defendant has kept Plaintiff on paid administrative leave.

24. Several incidents occurred in the months leading up to October 21 that caused Plaintiff's condition to deteriorate, including but not limited to Talbot approaching Plaintiff with his pants unbuttoned and unzipped on two occasions, the last of which was October 18 in her office.

25. Within three days of when she stopped reporting to work, Laurenza "made arrangements" for Plaintiff to move her work location to city hall and advised that he would no longer permit her to work the accommodated hours she had worked since the commencement of her employment.

26. On November 14, 2019, Plaintiff and her attorney met with the City's Director of Human Resources and Assistant City Solicitor, Anne Randazzo, to discuss her concerns. Randazzo retracted Laurenza's "arrangements," assured Plaintiff that her concerns would be investigated, and promised that Plaintiff would be provided a copy of the City's findings.

27. On December 19, 2019, the City retained a third-party investigator, Loraine M. Della Porta, whose report has not been shared with Plaintiff. In the City's

5

August 21, 2020, position statement at the Massachusetts Commission Against Discrimination (MCAD), the City appeared to confirm that the alleged conduct occurred but nevertheless asserted that the investigator found no support for unlawful sexual harassment, finding "no evidence that the conduct and comments [Plaintiff] attributed to her coworkers was unwelcome to [Plaintiff] or had offended [Plaintiff] at any time before she emailed [Laurenza] on October 21, 2019."

28. Despite her absence from work, Plaintiff continues to endure mistreatment from her coworkers. By letter postmarked October 22, 2020, and addressed to William DePardo at their home, an anonymous person wrote, among other things, that Plaintiff "needs to get off her ass, go to work, and stop screwing married men. She needs to give everyone back their time that was given to her by municipal employees for her alleged treatment in the workplace."

29. As a result of the conduct described above, Plaintiff's working conditions became intolerable, causing physical and mental anguish for which she has sought and continues to seek medical treatment. She has become anxious and withdrawn socially and has stopped enjoying customary activities.

30. Plaintiff has endured great emotional distress which compelled her to stop reporting to work and which greatly diminished the quality of her life over a prolonged period of time.

31. On June 10, 2020, Plaintiff file a Charge of Discrimination with the MCAD alleging sex discrimination and a hostile work environment.

32. On February 9, 2021, the MCAD dismissed the Charge pursuant to Plaintiff's request to withdraw.

## COUNT I
### Discrimination
### 42 U.S.C. § 2000(e)

33. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 32.

34. The actions described above constitute unlawful sexual harassment (hostile work environment) and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e).

## COUNT II
### Discrimination
### M.G.L. c. 151B, §4

35. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 34.

36. The actions described above constitute unlawful sexual harassment (hostile work environment) and sex discrimination in violation of Chapter 151B of the Massachusetts General Laws.

## COUNT III
### Retaliation
### M.G.L. c. 151B, §4

37. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 36.

38. Defendant, through Laurenza, retaliated against Plaintiff by threatening to end accommodated hours related to Plaintiff's childcare because she complained about the inappropriate conduct described above.

## JURY DEMAND

Plaintiff demands a trial by jury on all her claims.

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment against Defendant and to award her damages in the form of emotional distress, punitive damages and reasonable attorney's fees and costs, all as provided by law, and for such other and further relief as his Court deems just and proper.

Respectfully submitted,

KRYSTLE DEPARDO,

By her attorney,

/s/James Hykel
James Hykel, BBO #666861
Pyle Rome Ehrenberg PC
2 Liberty Square, 10th Floor
Boston, MA 02109
(617) 367-7200

Dated:  April 12, 2021